**Sara Galen FALOON and Alexandra Crooks Faloon, Plaintiffs,**

v.

**SUNBURST BANK, Defendant.**

**No. 3:92CV175–S–D.**

United States District Court,
N.D. Mississippi,
Western Division.

Nov. 17, 1994.

---

John Cocke, Clarksdale, MS, for plaintiffs.

Paul Stephens, Jackson, MS, for defendant.

## OPINION

SENTER, Chief Judge.

In this case, the plaintiff trust beneficiaries allege that the defendant trustee mishandled a trust established by their grandfather's will. Presently before the court are defendant's motions to dismiss for failure to join an indispensable party and for partial summary judgment on the punitive damages issue.

## FACTS

O. James Faloon, a prominent Clarksdale businessman, died in 1975. His last will and testament created a trust naming J. Thomas Faloon (James's only son) and plaintiffs Sara Galen Faloon and Alexandra Crooks Faloon (Thomas's daughters) as income beneficiaries. Sara and Alexandra, who were minors at the time, were also designated as residual beneficiaries. Coahoma National Bank was appointed trustee; by merger, defendant Sunburst Bank is the successor trustee.

Shortly after his father's death, Thomas quit his job with his father's company and moved to Mexico. Also, according to plaintiffs, he directed the trustee to follow the advice of a cousin who was in the investment business in handling the trust assets. As a result, the "trustee disposed of the original investments in the trust which were purchased by [James] and embarked on a long and costly journey of speculation and gambling with trust funds." In 1988, the trustee attempted to have plaintiffs, through their mother, ratify its course of alleged speculative investments. They refused to do so; however, in May of that year, their father signed the ratification agreement, thereby agreeing not to hold the trustee "accountable for any resulting loss" in the "absence of bad

faith or gross and wilful negligence." When plaintiffs reached majority, they filed the instant action against the trustee only, alleging that it negligently breached its fiduciary duty to them by investing the assets of the trust in speculative investments and by disbursing an excess amount of money to Thomas in disregard of the terms of the will, thereby depleting their fair share of the trust assets. Plaintiffs calculate that, as a result of the trustee's actions, the trust has lost over $1.3 million. They also seek $2 million in punitive damages. Jurisdiction is predicated on diversity, the plaintiffs being citizens of Washington, D.C. and New Jersey, and the defendant, a citizen of Mississippi.

The trustee has filed two motions which are now before the court. In the first, the trustee seeks to have this cause dismissed for failure to join an indispensable party, namely, the plaintiffs' father, Thomas. The parties agree that Thomas cannot be joined as a party to this action, *see* 13B Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 3621 (2d ed. 1984) (courts have consistently held that diversity suit may not be maintained by or against United States citizen who is domiciled in foreign country), but disagree as to the effects of nonjoinder. In the second, the trustee requests the summary dismissal of the punitive damages claim. Because of its dispositive nature, the dismissal motion will, of course, be considered first.

## DISCUSSION

### I. Motion to Dismiss

Rule 19 of the Federal Rules of Civil Procedure provides, in pertinent part:

A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if ... (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest.

Fed.R.Civ.P. 19(a). It continues:

If [such] a person ... cannot be made a party, the court shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable. The factors to be considered by the court include: first, to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

Fed.R.Civ.P. 19(b).

■ The structure of Rule 19 "reflects the analytical sequence that a court should follow in deciding a party joinder problem." 7 Charles A. Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1604 (2d ed. 1986). "Once an issue of compulsory joinder is raised, the court initially must determine whether the absent person's interest in the litigation is sufficient to satisfy one or more of the tests set out in the first sentence of Rule 19(a)." *Id.* In that determination, the court must look to the pleadings as they appear at the time of the proposed joinder. *Id.* Furthermore, "[t]here is no precise formula for determining whether a particular nonparty must be joined under Rule 19(a)." *Id.* Rather, the "decision has to be made in terms of the general policies of avoiding multiple litigation, providing the parties with complete and effective relief in a single action, and protecting the absent persons from the possible prejudicial effect of deciding the case without them." *Id.* If joinder under Rule 19(a) is not feasible because, e.g., it will deprive the court of subject matter jurisdiction, "the court must examine the four considerations described in Rule 19(b) to determine whether

the action may go forward [without the absentee] or must be dismissed, 'the absent person being thus regarded as indispensable.'" *Id.* (citation omitted). *See also Pulitzer–Polster v. Pulitzer,* 784 F.2d 1305, 1309 (5th Cir.1986).

■ "The general rule is, that in suits respecting trust property, brought either by or against the trustee[ ], the *cestuis que trust* as well as the trustee[ ] are necessary parties." *Carey v. Brown,* 92 U.S. 171, 172, 23 L.Ed. 469 (1875); *see also Walsh v. Centeio,* 692 F.2d 1239, 1243 (9th Cir.1982) ("As a general rule, all beneficiaries are persons needed for just adjudication of an action to remove trustees and require an accounting or restoration of trust assets"). "To this rule there are several exceptions." *Carey,* 92 U.S. at 172. For example, all of the trust beneficiaries need not be joined simply because some of the beneficiaries seek damages for themselves only and not for the benefit of the trust. *Pulitzer,* 784 F.2d at 1309.

■ In this case, the court is of the opinion that although plaintiffs' father, Thomas Faloon, maintains an interest in the corpus of the trust and its management, he is not a person who must be joined in this action within the meaning of Rule 19(a) because (1) he is not so situated that his ability to protect his interest in the trust may "as a practical matter" be impaired or impeded, Fed. R.Civ.P. 19(a)(2)(i), and (2) there is not a *substantial* risk that the trustee will be subjected to "double, multiple, or otherwise inconsistent obligations by reason of the claimed interest" if Thomas is not joined. Fed.R.Civ.P. 19(a)(2)(ii).

The court reaches these conclusions for interrelated reasons which revolve around Thomas's instructions to the trustee and the ratification agreement Thomas signed over six years ago. Specifically, the court does not believe that, as a practical matter, allowing this action to continue without Thomas's presence creates any real possibility of prejudice to him. Although a so-called "negative precedent" may be established against Thomas if the trustee prevails, *Pulitzer,* 784 F.2d at 1310, the court thinks it is highly improbable that, based on his prior course of conduct, Thomas would ever pursue litigation

against the trustee. By directing the trustee to follow the investment advice of a relative and then agreeing not to hold the trustee liable for any speculative investments it may have made, Thomas placed himself in a very different position from the plaintiffs and provided the trustee with a whole array of defenses against him that are not available against the plaintiffs. This naturally ties in with the court's determination that there is not a substantial risk that the trustee will be subjected to "'double or otherwise inconsistent liability.'" *Id.* at 1312 (citation omitted). Certainly, there is a *chance* that Thomas might seek legal redress against the trustee at some later time, but "[t]he key is whether the possibility of being subject to multiple obligations is real; an unsubstantiated or speculative risk will not satisfy the Rule 19(a) criteria." 7 Wright, Miller & Kane, *supra,* at § 1604. Therefore, under the facts and circumstances of this case, the court finds that the joinder of Thomas Faloon is not required under Rule 19(a). *See id.* ("By its very nature Rule 19(a) calls for determinations that are heavily influenced by the facts and circumstances of individual cases ...").

■ Although the court finds that Thomas Faloon is not a person whose joinder is desirable under Rule 19(a), it will proceed as if it had reached the opposite conclusion and consider the joinder question under Rule 19(b) also. *Cf.* 7 Wright, Miller & Kane, *supra,* at § 1607 ("Of course, if the absentee is not found to be a person whose joinder is desirable under Rule 19(a), the court need not engage in the Rule 19(b) analysis"). When a person who should be joined if feasible cannot be made a party because his joinder would defeat the court's subject matter jurisdiction, the court must then determine "whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable." Fed.R.Civ.P. 19(b). This exercise requires the court to "assess the factors set out in Rule 19(b), seeking to avoid manifest injustice while taking full cognizance of the practicalities involved." *Pulitzer,* 784 F.2d at 1312. The factors in 19(b) are "to a certain extent overlapping, and they are not intend-

ed to exclude other considerations which may be applicable in particular situations." Fed. R.Civ.P. 19 advisory committee's notes.

Turning then to the first factor—"to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties"—the court finds that neither Thomas nor the parties will be prejudiced by proceeding without Thomas. The court has already considered this question as it relates to Thomas and the trustee in its discussion of 19(a) but takes this opportunity to make some additional observations. First, there is no "immediate and serious" threat of prejudice to Thomas by proceeding in his absence, nor is there a "serious . . . threat," *id.* of a "fresh action by the absentee." Fed. R.Civ.P. 19 advisory committee's notes. And second, although plaintiffs have an alternative forum in which to litigate this case, they would be prejudiced by having to refile in state court after having invested over two years in this court and with trial being less than one month away. *See* 7 Wright, Miller & Kane, *supra,* at § 1618 ("concern for the expense and time that has been expended [on pretrial proceedings] is a good illustration of the use of pragmatic considerations not specifically mentioned in Rule 19"). *But see Tick v. Cohen,* 787 F.2d 1490, 1495 (11th Cir.1986) (court found that "[i]n light of the extensive relief sought," it was "extremely likely" that judgment in favor of plaintiffs would affect absentees but that dismissal would result in "negligible prejudice" to plaintiffs "because of the availability of an alternative forum").

With regard to the second factor—"the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided"—the court is of the opinion that any prejudice which may result from proceeding without Thomas can be lessened or avoided by the wording of the judgment. *See Provident Tradesmens Bank & Trust Co. v. Patterson,* 390 U.S. 102, 111–12, 88 S.Ct. 733, 738–39, 19 L.Ed.2d 936 (1968) (Rule 19(b) "makes it explicit that a court should consider modification of a judgment as an alternative to dismissal"). "An appropriate statement of the question might be

'Can the decree be written so as to protect the legitimate interests of outsiders and, if so, would such a decree be adequate to the plaintiff's needs and an efficient use of judicial machinery?'" *Patterson,* 390 U.S. at 112 n. 10, 88 S.Ct. at 739 n. 10. This court believes that it can. For example, in the event plaintiffs prevail, as equal trust beneficiaries with their father, they may be entitled only to those damages that relate to them personally and not to the trust as a whole, and the judgment can be drafted to reflect this.

As to the third factor, the court finds that "a judgment rendered in [Thomas's] absence will be adequate," i.e., "the interest of the courts and the public in complete, consistent, and efficient settlement of controversies," *id.* at 111, 88 S.Ct. at 739, will be protected. As discussed previously, the court believes the "practical likelihood of . . . subsequent litigation," 7 Wright, *supra,* at § 1608, is remote and at best only a "theoretical possibility that . . . may occur." *Id.*

Regarding the fourth factor—"whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder"—the court is of the opinion that although plaintiffs could pursue this litigation in a state court, at this juncture, with only a few weeks remaining before trial, plaintiffs' remedy in state court would be inadequate. *But see Walsh,* 692 F.2d at 1244 (additional important factor supporting dismissal was fact that case was only seven months old and "only preliminary discovery had been undertaken and no trial date had been set. Thus, very little duplication of effort would be necessary if the case were refiled in state court").

Therefore, assuming plaintiffs' father is a desirable party to this action, the court, having considered the factors outlined in Rule 19(b), finds that "the balance of the equities favor[s] the retention rather than the rejection of th[e] suit. . . ." *Rippey v. Denver United States National Bank,* 260 F.Supp. 704, 712 (D.Colo.1966).

## II. Motion for Partial Summary Judgment

Defendant also seeks summary dismissal of plaintiffs' punitive damages claim. As this cause is set for a nonjury trial, the court

believes that the "better course would be to proceed to a full trial," *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986), on all issues. Defendant has, however, raised an interesting issue regarding the 1993 punitive damages statute, *see* Miss.Code Ann. § 11–1–65, i.e., whether the standard under which punitive damages may be assessed is procedural or substantive, and the parties should be prepared to address this matter at the appropriate time during trial.

## CONCLUSION

Having carefully considered the matter, the court finds that defendant's motion to dismiss for failure to join an indispensable party and its motion for partial summary judgment are not well taken and are denied. All claims will proceed to a trial on the merits. The court also takes this opportunity to advise the parties that, as this is a nonjury case, the court requires proposed findings of fact and conclusions of law so that it might expeditiously issue a ruling. Toward that end, the parties should submit their proposed findings and conclusions no later than Wednesday, November 30, 1994.